UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>ROBERT HUNT,<br>    Defendant. | Crim. No. 2005-10221-RCL |

**DEFENDANT'S SENTENCING MEMORANDUM
AND MOTION FOR DOWNWARD DEPARTURE**

I.   **FACTS**

   A.   **Circumstances surrounding the case and the guilty plea**

This case arises out of three separate sales of crack cocaine in July and August, 2005, to a cooperating witness, each approximately 13 – 15 grams in weight. On each occasion, the CW was wearing hidden audio and video recording equipment. The Defendant does not dispute the facts set out in the Presentence Report, and takes full responsibility for his actions.

In November, 2005, in anticipation of a change of plea, the Defendant met with the prosecutor and case agents and gave a proffer providing all information he was aware of with regard not only to the offense charged, but also his knowledge of drug dealing in general in the Brockton area. In so doing, he provided the government with the name of his source of supply.[1] The government has never challenged the *bona fides* of the Defendant in providing

---

[1]   Three months after the Defendant made his proffer, the individual the Defendant identified as the source of supply was arrested by the Massachusetts State Police. He was reportedly in the possession of over $500,000 in cash, more than 200 grams of cocaine, and a handgun.

this information to the best of his knowledge.

Clearly, the Defendant made this proffer hopeful that the government would file a motion pursuant to §5K.1. The government however, declined to file the motion.

Thereafter, the Defendant pled guilty as charged.

### B.   Personal circumstances of the Defendant

As noted in the Presentence Report, the Defendant is 31 years old, married, and the father of two girls, ages 10 and 5. His circumstances as a boy and young man were exceptionally dire. His father dropped out of his life when he was 8 years, old; at 13, the Defendant moved in with his maternal aunt, because his mother was not longer able to care for him due to her intravenous drug habit. The Defendant's mother was violent and abusive when on drugs. At 18, the Defendant left his aunt's house, because she was treating her own children better than she treated him. In 2004, the Defendant's mother died of AIDS. An uncle and a cousin died of AIDS as well. The Defendant himself developed a significant dependence on marijuana and alcohol.

While living with his aunt, the family moved from Dorchester to Brockton where he attended school as far as the ninth grade. The Defendant has received no further education, and is substantially illiterate.

Throughout this chaos, the Defendant has maintained a stable, long-term relationship with Nikia Hunt. They have been together since approximately 1988, and were married in 2000.

Nikia Hunt works as nurse in a nursing home, and is the bread winner of the family. Throughout the marriage, the Defendant was a stay at home father, taking care of the children. Mrs. Hunt reports that the Defendant's arrest and

detention has had a significant adverse effect of the children. She has sought a psychological evaluation for them.

The Defendant's arrest and detention has resulted in serious medical problems for the Defendant as well. Following the death of his mother in 2004, the Defendant was prescribed Zoloft for anxiety. During his detention, he has continued to experience severe anxiety, resulting in shortness of breath, difficulty breathing and strained speech. Additionally, during his detention, the Defendant complained of frequent urination and blurred vision. These symptoms were not addressed by the medical staff at Plymouth until his wife told him he should ask to have his blood sugar checked. This resulted in the Defendant being taken to the emergency room at Jordan Hospital, where he was admitted. His blood glucose level was found to be 758, and he was diagnosed with diabetes. A narrative history from the Jordan Hospital medical record is attached below as Ex. A.

The Defendant currently receives daily insulin shots at the Plymouth County Correctional Center. An obese man, he additionally takes medications for high cholesterol, acid reflux, as well as a heart medication.

II.     ARGUMENT

    A.     **This Court should find that the Defendant qualifies for relief from the minimum mandatory sentence pursuant to the safety valve provision, Guideline §5C1.2. and 18 USC §3553(f).**

18 USC §3553(f), and the Guideline which implements the statute, §5C1.2, provide that a defendant shall be sentenced according to the Guidelines, as opposed to any applicable statutory minimum mandatory sentence, where five factors are met:

  a. that the Defendant has no more than one criminal history point;

  b. that no firearm or violence was involved in the instant offense;

  c. that no death or serious injury resulted from the instant offense;

  d. that the defendant was not a leader or an organizer; and

  e. that the defendant has provided that government with complete and truthful information about the offense.

  The Defendant has clearly met factors (b) –(e), and he is not aware that the government disputes this. The difficulty lies with the first factor.

  The Probation Department has determined that the Defendant has two criminal history points, on account of a November 7, 1995, conviction for distribution of cocaine, for which he received a sentence of one year and one day. This is the same prior conviction that would otherwise call for a 10 year minimum mandatory sentence pursuant to 21 USC §851(b)(1)(b). This prior conviction should not be assigned two criminal history points such that the Defendant is denied safety valve relief. The safety valve was adopted to "limit the harsh effects of minimum mandatory sentenced in certain cases," *United States v. Bermudez*, 407 F. 3d 536, 541 (1st Cir., 2005), and in this case, a 10 year mandatory sentence is particularly harsh.

  The Guidelines allow for flexibility when calculating criminal history points. Thus, §4A1.3(b)(1) provides for a downward departure where "the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." Such is the case here.

  First, it must be noted that this prior conviction is over ten years old, and barely qualifies to be counted at all under the Guidelines time period provisions. The combined effect of Guidelines §4A1.1(b) and §4A1.2(e) is that prior sentences

of between 60 days and one year and one month are to be counted only where the prior sentence "was imposed within ten years of the defendant's commencement of the instant offense." The instant offense commenced in July, 2005. The prior sentence was imposed on November 7, 1995, nine years and eight months earlier. A mere four months separates the Defendant from the 10 year cutoff. The underlying conduct itself occurred in October, 1994, well over 10 years prior to the Defendant's arrest in the present case. Additionally, it must also be noted that this conviction resulted from a guilty plea which the Defendant entered after trial had commenced. The plea involved the Defendant signing a lengthy waiver of rights form, which then as now, the Defendant was incapable of reading on his own. He has no memory of his lawyer reading the form to him prior to signing it.

Under these circumstances, (there are no other convictions on the Defendant's record), the assignment of two criminal history points overstates the seriousness of the Defendant's criminal history. As noted above, the Guidelines allow for a downward departure in these circumstances. Guideline §4A1.3(b)(3)(B) contains a limitation, however, providing that a defendant whose criminal history is Category I after such a departure, "does not meet the criterion of subsection (a)(1) of §5C1.2 [the safety valve] if, before receipt of the downward departure, the defendant had more than one criminal history point under §4A1.1."

The Defendant contends that after *United States v. Booker*, 125 S. Ct. 738 (2005), this section, together with the safety valve provision which reiterates it, §5C1.2(a)(1), must be read as advisory. While clearly a departure in the pre-*Booker* world that would result in rendering a defendant eligible for the safety

valve would be prohibited, after *Booker*, such prohibited departures may be considered by the sentencing judge. Thus, in *United States v. Smith*, 445 F. 3d 1, 5 (1st Cir., 2006), the Court explained that post-*Booker*,

> [t]hat a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines. The guidelines - being advisory - are no longer decisive as to factors any more than as to results. About the best one can say for the government's argument is that reliance on a discounted or excluded factor may, like the extent of the variance, have some bearing on reasonableness.

Here as well, the prohibition found in Guideline §4A1.3(b)(3)(B), and repeated in §5C1.2(a)(1), purporting to absolutely limit the Court's discretion to depart downward from a criminal history score of two points to one point, thereby making the defendant eligible for safety valve relief, must be viewed as advisory.

This conclusion becomes readily apparent when the safety valve guideline and the safety valve statute are compared. In 18 USC §3553(f), the first criteria for safety valve relief requires that:

> (1) the defendant does not have more than 1 criminal history point, as determined under sentencing guidelines

The statute contains no limitation on the Court's discretionary authority to depart downward from the defendant's criminal history score. In contrast to this, Guideline §5C1.2(a)(1) repeats the limitation on departure authority found in the criminal history section. Thus, under the Guidelines, the first criteria requires that:

> (1) the defendant does not have more than 1 criminal history point, as determined under sentencing guidelines ***before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category).***

(Emphasis added.) The absence of this limiting language in §3553(f) is a powerful indication that the Court retains discretionary authority to depart from the Defendant's criminal history score, such that he may become eligible for safety valve relief.

This reading of the criminal history and safety valve Guidelines does not conflict with the rule of *Apprendi v. New Jersey*, 530 US 466 (2000), and *Booker* itself, that the Sixth Amendment bar to judicial fact-finding in sentencing matters does not include the fact of a prior conviction. The Defendant does not contest the existence of his prior conviction, and has no objection to the Court concluding it exists as a matter of fact. Rather, the issue here concerns the *consequences* of such fact-finding, and the purported limitation on the Court's discretion to depart downward from a particular criminal history score. Under *Booker*, it is now clear such limitations on the Court's discretion are no longer valid.

> B.  **Pursuant to 18 USC 3553(a), 70 months is the appropriate sentence.**

Pursuant to *Booker*, the Court must look to the Sentencing Reform Act for guidance in setting a just sentence. 18 USC §3553(a) provides that a sentence shall be "sufficient, but not greater than necessary" to achieve the four sentencing goals set out in §3553(a)(2):

(a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

(b) deterrence;

(c) incapacitation ("to protect the public from further crimes"); and

(d) rehabilitation ("to provide the defendant with needed educational or

vocational training, medical care, or other correctional treatment in the most effective manner").

To determine the minimally sufficient sentence, the Court must look to the several factors listed in §3553(a):

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the kinds of sentence available;"

(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4) the need to avoid unwarranted sentencing disparity; and

(5) the need to provide restitution where applicable.

18 USC §3553(a)(1) and (3)-(7).

In reaching a sentencing decision, the Court has approved a sequential method, which involves

> determination of the guideline range, including any proposed departures, followed by the further determination whether other factors identified by either side warrant an ultimate sentence above or below the guideline range.

*United States v. Jimenez-Beltre*, 440 F. 3d 514, 518-519 (1st Cir., 2006).

The Defendant urges that the Guideline sentence, including the proposed criminal history departure and application of the safety valve, is the reasonable sentence in this case under 18 USC §3553.

As noted above, this is a case that was made through the affirmative actions of a cooperating witness. While the Defendant takes responsibility for making the sales, the CW was the moving party, pursuing the Defendant, and pushing him to provide the drugs.

Additionally, as also noted above, despite coming from very chaotic

circumstances, the Defendant managed to commit to a long-term marriage, creating a stable environment for his two daughters. And although he did not work outside the home, and is functionally illiterate, he was the primary care giver for the children. The Defendant's absence from the home has been particularly difficult on the children.

In the absence of safety valve relief, the Court would be required to impose a 10 year sentence' clearly a very harsh sentence and one that is "greater than necessary." Were it not for the prior 1995 drug conviction, the minimum sentence would be 5 years. And had the instant offense occurred a mere 4 months later, the prior offense would not count under the Guidelines at all for criminal history purposes. Granting the Defendant a downward departure from 2 criminal history points to 1, together with safety valve relief for which he would then qualify, places him in Level 27, Category I, with a sentencing range of 70-87 months. The proposed Guideline sentence of 70 months is substantial, yet reasonably lies between the two statutory alternatives.

Finally, it is clear that the Defendant has many health issues, and has already become seriously ill so as to require hospitalization while being detained. This mitigates in favor of a lesser sentence.

WHEREFORE, the Defendant prays this Court

A.  Impose a sentence of no greater than 70 months;

B.  Recommend that the Defendant participate in the 500 hour drug program; and,

C   Recommend that the Defendant be designated to the FMC Devens, such that the Defendant's medical needs can be most appropriately met, and to

enable his family to regularly visit him.

                                      ROBERT HUNT
                                      by his attorney,

Date:  August 17, 2006                /s/Matthew A. Kamholtz
                                      Matthew A. Kamholtz
                                        BBO #257290
                                        FEINBERG & KAMHOLTZ
                                        125 Summer St.
                                        Boston, MA  02110
                                        (617) 526-0700

## CERTIFICATE OF SERVICE

      I, Matthew A. Kamholtz, hereby affirm that a copy of the within was this day served upon the following, via the electronic filing system delivery:

| | |
|---|---|
| James Lang, AUSA | Michelle K. Roberts, USPO |
| United States Attorney's Office | Probation Office |
| Suite 9200 One Courthouse Way | United States District Court |
| Boston, MA 02210 | One Courthouse Way |
| | Suite 1200 |
| | Boston, MA  02210 |

Date:  August 17, 2006                /s/Matthew A. Kamholtz
                                        Matthew A. Kamholtz

# Exhibit A

JORDAN HOSPITAL, INC.
275 SANDWICH STREET, PLYMOUTH, MA 02360
(508) 746-2000

*** H I S T O R Y  &  P H Y S I C A L ***

PATIENT NAME: HUNT, ROBERT          ATTENDING MD: PETERS M.D., JENNIFER B.
D.O.B./ AGE: 02/01/75   30          DICTATING MD: HORDEJUK M.D., DARIUSZ
   ACCOUNT #: 45946506                 ADMIT DATE: 12/19/05
      UNIT #: U-493563              DISCHARGE DATE: 12-21-05
                                    PT. LOCATION: 2ETA

## HISTORY

**CHIEF COMPLAINT:** Hyperglycemia

**PRESENT ILLNESS:** Mr. Hunt is a 30 year old African American male with a past medical history of reflux, who came to the hospital due to hyperglycemia. He is currently in the Plymouth Correctional Facility. He had noted blurring of vision and increased urination. While speaking with his wife, who is a nurse, he complained about that and was advised to ask his doctor to check his blood sugar. His blood glucose was noted to be 758. The patient was transferred to the Emergency Department. His basic metabolic profile revealed ketones and blood sugar of 373 in ED. The patient is currently feeling well. He complained of occasional blurry vision, frequent urination, and weight loss. He denies fever, chills, cough, shortness of breath, chest pain, abdominal pain, or diarrhea.

**PAST HISTORY:** Asthma, chronic heartburn.

**FAMILY HISTORY:** His family history is significant for multiple family members with diabetes. His mother died at age 50 for from cancer (?).

**REVIEW OF SYSTEMS:** As above.

**SOCIAL HISTORY:** He used to work in construction, and used to smoke 1 1/2 packs a day for seven years, and has not smoked for the past 4 months since his incarceration. He used to have problems with alcohol, but is having no alcohol since his incarceration. He used to smoke occasional marijuana. He is married with two children.

**ALLERGIES:** No known drug allergies

**MEDICATIONS:** Protonix 40 mg PO daily.

## PHYSICAL

**VITAL SIGNS:** Temperature 98.3, respirations 18, pulse 95, blood pressure 146/100.

**GENERAL APPEARANCE:** He is an overweight African American male lying comfortably in a hospital bed.

**HEENT:** Normocephalic atraumatic. PERLA. EOMI. Moist mucous membranes. No erythema. Neck supple.

**CHEST:** Lungs clear to auscultation

**HEART:** Regular rate and rhythm, normal S1 and S2

**ABDOMEN:** Soft, nontender, with positive bowel sounds

JORDAN HOSPITAL, INC.
275 SANDWICH STREET, PLYMOUTH, MA 02360
(508) 746-2000

\*\*\* H I S T O R Y  &  P H Y S I C A L \*\*\*

PATIENT NAME: HUNT, ROBERT         ATTENDING MD: PETERS M.D., JENNIFER B.
D.O.B./ AGE: 02/01/75   30         DICTATING MD: HORDEJUK M.D., DARIUSZ
ACCOUNT #: 45946506                   ADMIT DATE: 12/19/05
UNIT #: U-493563                   DISCHARGE DATE:
                                   PT. LOCATION: 2ETA

**EXTREMITIES:** 2+ edema

**DATA:** CMP showed a sodium of 135, potassium 4.3, chloride 37, bicarb 23, Glucose 373, positive ketones. BUN 9, creatinine 0.9. Calcium 9.4. CBC grossly normal. Differential within normal limits. EKG showed normal sinus rhythm with a rate around 80, no acute ST changes.

**ASSESSMENT/PLAN:** Mr. Hunt is a 30 year old man with a past medical history significant for asthma, gastroesophageal reflux disease, admitted to Jordan Hospital due to hyperglycemia. He was diagnosed with new onset diabetes. He will be admitted to the medical service. Insulin drip will be provided. I will change his IV fluids to D5 normal saline when blood sugar will be below 250 and continue insulin drip until his ketones are negative. Hopefully overnight the patient will be able to be changed to sliding scale He will need an ADA diet and diabetic teaching in the morning. In the meantime he will continue with his Protonix. He will follow up with the hospitalist in the morning.

dict: 12/19/05                DICTATED BY: _____
trans: 12/19/05  by: MN                    DARIUSZ HORDEJUK M.D.

                                           DARIUSZ HORDEJUK M.D.
                                           Electronically Signed

cc: